TRAVELERS INSURANCE COMPANY, APPELLANT, V. SUSAN L. THOMPSON: IRWIN L. THOMPSON ET AL., APPELLEES.

299 N. W. 329

FILED JULY 18, 1941. No. 31127.

*Chatt & Ellenberger*, for appellant.

*Spillman & Ptak, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and SPEAR and FALLOON, District Judges.

PAINE, J.

Farm property was bid in at a foreclosure sale for $26,000 by the defendants, who are appellees, and they thereupon paid the sheriff $200 as partial payment on said purchase. Upon failure to complete the purchase, a second sale was held, at which the plaintiff and appellant bid $15,200, which was confirmed and deed ordered. This amount was $962.04 less than the amount due on plaintiff's first mortgage, and the costs of the second sale were $22.70 in addition to the loss. Thereupon, plaintiff filed a motion asking judgment against defendants for the loss suffered by defendants' failure to go through with their bid at the first sale.

The trial court entered a judgment for plaintiff in the sum of $200 and costs, and directed the sheriff to pay to plaintiff the sum of $200, which defendants had paid in at the time they were the successful bidders at the first foreclosure sale. From this judgment, plaintiff appeals.

The pleadings and bill of exceptions show that the Travelers Insurance Company, as plaintiff, secured a decree on June 9, 1937, finding that the amount due upon its mortgage was $14,177.48, with interest at 10 per cent. from the date of the decree, and the plaintiff was given a first lien upon the northwest quarter of section 17, township 21, range 7, in Cuming county, Nebraska, and the decree provided that, if the defendants failed to pay the amount due

within 20 days, the sheriff should sell said real estate to pay the amount due.

A request for nine months' stay was filed by Susan L. Thompson, Kate High, Irwin L. Thompson, Thompson Cattle Company, a copartnership, Victor Thompson and Caleb Thompson on June 29, 1937.

On April 11, 1938, an additional decree was entered, showing that a $3,000 note had been given to I. Sibbernsen, secured by a second mortgage, which note and mortgage were sold and assigned to John J. Sullivan, who died February 17, 1926, and Kate L. Sullivan assigned the same to V. E. Thompson, and the court found there was due the sum of $4,833.33 thereon.

On April 11, 1938, a decree was also entered in favor of Irwin L. Thompson in the sum of $9,666, with interest at 10 per cent., the same being a third lien upon said real estate.

The first order of sale was issued on March 16, 1938, and the first sale was held on April 18, 1938. Attorney Ellenberger made a bid for the plaintiff, and just before the sale closed the sheriff testified that attorney Beckenhauer, acting for the defendants Irwin L. Thompson and Victor Thompson, bid $26,000, and they were the successful bidders. They paid $200 at that time into the hands of the sheriff of Cuming county as a part payment on their bid.

The successful bidders having failed to comply with their bid, plaintiff filed motion on May 11, 1938, the conclusion thereof reading as follows: "Wherefore, plaintiff moves the court to enter a conditional order of confirmation in this case, providing that said confirmation shall become absolute only upon satisfaction by defendants of their bid on or before a day certain, to be fixed by the court, not to exceed twenty days from the date of hearing upon this motion, and that if the defendants fail to comply with and satisfy their bid within the time fixed by the order of the court, that said real estate shall be again advertised and sold by the sheriff of Cuming county, Nebraska, at the cost, expense and risk of the defendants, Irwin L. Thompson and Victor Thompson, and that plaintiff have judgment against said defendants

for any deficiency which may result in case said real estate at a resale fail to bring a price sufficiently great to satisfy the amount of plaintiff's decree with interest and costs of this action."

Upon hearing this motion, the trial judge issued an order in pursuance thereof. On July 6, 1938, defendants asked for additional time to comply with their bid.

On July 12, 1938, an alias order of sale was issued, and the second sale held August 15, 1938, at which sale plaintiff was the successful bidder at $15,200, and sale was confirmed October 3, 1938, after objections thereto had been over-ruled.

Plaintiff thereupon filed motion, in which all of the pleadings and steps taken therein were reviewed, and judgment against defendants was prayed in the sum of $984.74.

Trial was had upon the issues, and the matter was taken under advisement for some time, and on September 3, 1940, the court entered judgment for plaintiff in the sum of $200 and costs, from which plaintiff appeals.

The general law covering the questions was stated very early by Chief Justice Mason: "A person by becoming a purchaser at a judicial sale, becomes a party thereto, and may both be compelled to complete his purchase, and is entitled of right to an order directing the sheriff to make the deed." *Phillips v. Dawley,* 1 Neb. 320.

Now, the question presented is: Did the court have the power to order a resale, and hold the bidder at the first sale for the loss and expense suffered by the resale?

A case very closely in point is that of *Rife v. Swanson,* 109 Neb. 814, 192 N. W. 498. Judge Letton wrote the opinion, and the syllabus reads as follows: "A sale under foreclosure was made on March 24, 1921. The sale was confirmed on June 3, 1921. The purchaser failed to pay the purchase price, and, on motion filed July 11, the court on July 12, the purchaser being in court by his attorneys, ordered that the confirmation and sale be set aside, and a resale ordered at the purchaser's risk and loss in case the real estate sold for less at the resale than the amount of the

bid. The purchaser appeals merely from that part of the order which directs the resale to be at his risk. *Held,* that the order of the district court was justified, and that under the circumstances it was unnecessary to issue an order to show cause before setting aside the sale."

This case appears to have been cited but once in the many years since it was released, and that was in a tax foreclosure case of *Dawson County v. Whaley,* 134 Neb. 509, 279 N. W. 164, and reaffirming the law to be as follows: "For, by the acceptance of his bid, the bidder becomes subject to the jurisdiction of the court and concluded by its orders, and he may be required and compelled to perform his bid; and it has been held that, if a purchaser fails to comply with his bid, a resale may be ordered at his risk and he be held for a loss if the resale is for a less amount." See, also, *Gregory v. Tingley,* 18 Neb. 318, 25 N. W. 88; *Penn Mutual Life Ins. Co. v. Creighton Theatre Bldg. Co.,* 51 Neb. 659, 71 N. W. 279.

"At a sale under order of court for the benefit of creditors, the sale to be for 'cash in hand,' C.'s bid was accepted, but, instead of paying cash, he offered a contract between himself and certain of the creditors, whereby he was to buy the land, apply their claims in payment of the price, and hold the land as trustee. The sale was reported, and the court offered to confirm it, provided C. would pay the amount of his bid in cash. This he refused to do, relying upon his contract with the creditors, whereupon the court ordered a resale, and subsequently entered a decree against C. for the deficiency between his bid and the proceeds of the resale, and for the extra costs. *Held,* that a formal confirmation of the sale to C. was not necessary in order to fix his liability for the deficiency." *Camden v. Mayhew,* 9 S. Ct. 246 (129 U. S. 73).

The approved procedure is concisely set out in 31 Am. Jur. 540, sec. 257, where it is said: "Where the resale has been lawfully ordered and duly conducted, the defaulting purchaser incurs a liability for any difference between the sum at which he had agreed to buy the property at the first sale

and the amount that it actually brings at the resale, together with the costs and expenses of the resale."

The question presented, of whether it was proper to proceed in the same foreclosure case by a motion, as was done in the case at bar, is answered by the part of the paragraph immediately following that quoted above, and which reads: "It is not necessary that such liability be ascertained and enforced by an original, independent action, but the purchaser may be proceeded against in the same suit by rule, or in any other mode devised by the court that will enable him to meet the issue as to his liability. In fact, such an action will not be maintained where relief can be obtained in the pending action, although it may be after the latter is closed by a final judgment."

We will now examine the contentions of the defendants which led the trial court to refuse to render a judgment for a greater sum than the $200 already paid into court by the defendants.

Defendants cite the case of *Shelby v. Platte Valley Public Power and Irrigation District*, 134 Neb. 354, 278 N. W. 568: "Equity will not aid one whose conduct connected with the controversy has been unconscientious or unfair." To support the application of this principle, the defendants urge that they endeavored, a few days before the first sale was held, to get the plaintiff to refinance the first mortgage in case they bid in the property, and just two days before the sale they received a letter on the stationery of the Travelers Insurance Company, showing the writer to be manager of the "Mortgage Loan Division," and this exhibit No. 20 reads as follows, omitting the printed letterhead:·

"Omaha, Neb. April 16, 1938

(Copy of Ex. 20 WRE)
"Mr. Victor Thompson,
"West Point, Nebraska

"Re: 37941—Thompson—Cuming County
"Dear Mr. Thompson:

"I submitted to the Home Office your proposition, and this morning received a reply which, while not entirely

favorable, is not entirely unfavorable. I am again writing them and recommending that they accept the proposition as we discussed it and have requested that they wire approval or rejection so that we will receive it Monday. If I hear from them I will immediately contact you by telephone or wire.

"I am convinced in my own mind that the best thing for you to do is to let this property sell, as I feel sure that we can work out a proposition that will be mutually favorable for all parties concerned. The delinquencies are large, we are working at a long distance, and it does take a little time to put the matter over, for the reason that the loss the Company would agree to accept is considerable and we are all of the opinion that the property eventually will be worth the full amount of the loan and accumulations.

"Yours very truly,

"(Signed) E. P. Gaines, Manager."

Victor Thompson, defendant, testified that after the first sale he went to Omaha to make arrangements to renew the mortgage indebtedness and "finish up the deal as we had outlined it." When he saw Mr. Gaines, Mr. Gaines said: "There is just nothing we can do about that now. The ship's gone. * * * We have decided not to renew the mortgage and we are going to have to put the farm up and resell it."

Mr. Thompson further testified that he tried to borrow the full amount of the plaintiff's lien from the Federal Land Bank and two other loan agencies, but that he did not have time enough for the loan to be completed.

Defendants argued to the trial court and to this court that a bidder's liability for not complying with his bid is not an absolute liability, and they claim that the theme running through these cases is that the purchaser must be in good faith and must intend to comply with his bid. He is liable only when he unjustifiably refuses to complete his bid, and he will be excused from completing his contract for any cause that renders it unjust or unconscientious to insist upon its performance.

This court sees no promise in exhibit No. 20, received

before the bid was placed, to justify calling the business procedure of the plaintiff unfair and unconscientious. The trial court gave defendants 30 days in which to comply with their bid, or an alias order of sale would issue.

We fail to see any legal grounds for failing to enter a judgment for the plaintiff's loss of $984.74, and the judgment is reversed, with instructions to enter a judgment as prayed.

REVERSED.