PIERCE C. JONES ET AL., APPELLEES, V. RICHARD G. BURR, JR., ET AL., APPELLANTS, ED JURGENSMEIER ET AL., APPELLEES.
389 N.W.2d 289

Filed June 27, 1986.   No. 84-929.

Douglas Pauley of Conway, Connolly and Pauley, P.C., for appellants.

D. Charles Shoemaker of Shoemaker & Witt, for appellees Jones et al.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Richard G. Burr, Jr., and DeAnne Burr (hereinafter referred to as buyers) appeal from a judgment entered by the district court for Webster County, Nebraska, finding that the appellees Pierce C. Jones, Ellen G. Jones, James M. Corner, and Alice G. Corner (hereinafter referred to as sellers) were entitled to an immediate foreclosure of certain land conveyed by sellers to buyers. The single assignment of error raised by buyers is that the district court erred in finding that the sellers were entitled to foreclosure. We have reviewed the record and conclude that the district court was correct, and the judgment must be affirmed.

On August 16, 1972, sellers entered into an agreement to convey to Ed Jurgensmeier, another one of the buyers, certain real estate located in Webster County, Nebraska, and more particularly described as "The West Half (W¹/₂) of Section Five (5) and the West Half (W¹/₂) of Section Eight (8), all in Township Two (2) North, Range Eleven (11) West of the 6th P.M., Webster County, Nebraska," for a total purchase price of $253,000. A part of the purchase price was to be paid upon

execution of the agreement, a further sum upon delivery to the escrow agent of a warranty deed, and the balance in annual installments over a period of 20 years. On October 31, 1972, Jurgensmeier assigned and conveyed all of his right, title, and interest in the agreement to Richard G. Burr, Jr.

The agreement provided in paragraph 4 in part as follows: "[T]he Buyer agrees to pay, *before the same become delinquent*, all such taxes for the year 1972 and subsequent years." (Emphasis supplied.) Additionally, paragraph 13 of the agreement provided in part:

> If the Buyer fails to pay any amount due under the terms of this contract or if the Buyer fails to perform any of the other terms, covenants, or agreements of this contract, the Owners may declare a default by delivering written notice thereof to the Buyer. Such notice shall be addressed to the Buyer's residence or at such other place as designated from time to time in writing by the Buyer. . . . If the Buyer fails to make said payment or correct said default within ninety (90) days after delivery of such written notice, the Owners may declare the entire principal sum remaining unpaid under this Agreement together with accrued interest and any advances made by the Owners as herein provided, immediately due and payable at the option of the Owners without further notice or demand . . . . Failure of the Owners to exercise any option or remedy herein specified at the time of any default or failure of the Owners to give any such notice in the event of such default shall not operate as a waiver of the right of the Owners to exercise such option or remedy for any subsequent default at any time thereafter.

On November 14, 1980, sellers' attorney sent a certified letter to Richard G. Burr, Jr., informing him that he had not paid the 1978 and 1979 real estate taxes, in violation of paragraph 4 of the agreement. The failure to pay these taxes constituted a default under the agreement. Burr was advised that if the default was not cured within 90 days the sellers would consider the full amount of the unpaid balance to be due and owing in accordance with the terms of the contract. In other words, they advised Burr that unless he cured the defect within

90 days sellers would accelerate the entire purchase price. The 90 days passed, the taxes were not paid, and the default was not cured. More than 90 days later, on March 31, 1981, the real estate taxes for the year 1978 only were paid in full. The real estate taxes for the year 1979, which were also delinquent and which had been included in the notice of default letter, however, were not paid. Although Burr did not correct the default by paying the 1979 real estate taxes, he did, nevertheless, tender to the sellers the installment payments for the years 1981 and 1982, which were accepted by the sellers. During all of this time, Burr failed to pay the real estate taxes for the years 1980, 1981, and 1982.

On or about February 18, 1983, sellers' attorney once again sent a certified letter to Burr informing him that he had failed to pay the real estate taxes for 1979 and all subsequent years and that "this constitutes a default enabling [sellers] to declare the entire unpaid balance due on the contract." The letter did not, however, indicate that Burr had 90 days in which to cure any of the defaults noted in the letter of February 18, 1983. On April 25, 1983, suit was commenced by sellers. Nearly a month later, on May 20, 1983, and after suit was commenced, Burr paid the real estate taxes for the years 1979 through 1982. He did not pay the 1983 taxes until September 27, 1984, more than a year after the suit was commenced.

Buyers' argument seems to be that because the sellers accepted the payments of principal which were due, sellers waived the acceleration and therefore could not proceed to foreclose on the agreement for the full amount due and owing on the purchase price unless the sellers gave buyers another 90 days in which to cure the default occasioned by their failing to pay the real estate taxes for the years *1979* through 1983. In that regard we think buyers are in error.

To begin with, the law in this jurisdiction is clear that where the parties enter into an executory contract for the sale of real estate, even though title has not passed, the vendor, upon default by the vendee, may treat the contract as an ordinary real estate mortgage and foreclose it as such. See, *Ryan v. Kolterman*, 215 Neb. 355, 338 N.W.2d 747 (1983); *Hendrix v. Barker*, 49 Neb. 369, 68 N.W. 531 (1896). Furthermore, the

right to accelerate upon default is binding and enforceable. As we noted in *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. 469, 480-81, 293 N.W.2d 843, 849 (1980):

> [A] stipulation in a mortgage, providing that the whole debt secured thereby shall become due and payable upon failure of the mortgagor to pay the interest or any installment of principal upon maturity thereof or to comply with *any other condition of the mortgage* is a legal, valid, and enforceable stipulation and is not in the nature of a penalty or forfeiture which a court of equity will refuse to enforce.

(Emphasis in original.)

The requirement of paragraph 4 of the agreement regarding the payment of taxes was such a condition, and upon failure by Burr to perform, the sellers were entitled to declare default and, in the event that Burr failed to correct the default within the 90 days as provided for in paragraph 13 of the agreement, to cause the entire purchase price to be accelerated and to become due and payable at once. This they did when they gave notice to Burr on November 14, 1980, advising him that the real estate taxes for the years 1978 *and 1979* were unpaid. By not paying either the 1978 or 1979 taxes before the 90 days were up, Burr failed to correct the default, and, in accordance with both the agreement entered into by the parties and the letter of November 14, 1980, the entire purchase price was accelerated and became due and payable at once. Once the purchase price was accelerated, unless the parties entered into some other valid agreement waiving the acceleration, or unless the sellers took some positive action which would in law constitute a waiver, the entire amount under the contract remained due and owing. We have said:

> After valid exercise of the right to accelerate the maturity of the whole debt, the amount in default was the full amount due on the mortgage, and such tender [of less than the full amount] is ineffective. If a default exists, and the option to accelerate is exercised by the mortgagee, the effect thereof cannot be defeated by the mortgagor without the concurrence of the holder of the mortgage.

*United Benefit Life Ins. Co. v. Holman*, 177 Neb. 682, 684-85,

130 N.W.2d 593, 595-96 (1964). See, also, *Gasper v. Mazur*, 157 Neb. 857, 62 N.W.2d 117 (1954). Burr never corrected the default by paying the 1979 real estate taxes until after suit was commenced on April 25, 1983.

In Nebraska a contract will be enforced by the court so long as it is not unconscionable. *Guaranteed Foods v. Rison*, 207 Neb. 400, 299 N.W.2d 507 (1980). There is no contention here that this land sale agreement is either unconscionable or against public policy. Therefore, the parties are bound by the words of the contract, including the acceleration clause. The buyers in the instant case were given every reasonable opportunity to correct the default. There is no indication from the record that buyers were financially unable to pay the taxes or that the failure to pay the taxes was due to anything other than the buyers' arbitrary determination not to pay unless and until required to do so. The record further discloses that there were several conversations between buyers and sellers regarding these delinquent taxes and that, on each occasion, buyers assured the sellers that the delinquency would be corrected. In fact, at one point the buyers requested sellers to defer any action for a period of 6 months, after which time buyers would pay off the contract in full. At the expiration of the 6-month period, that did not take place. And, as the facts further disclose, the 1983 taxes were not paid for a year after foreclosure was instituted. For buyers to suggest that they have in some manner been taken advantage of or are being unfairly treated is wholly unsupported by the record in this case. The evidence does not disclose that this was anything other than a deliberate and knowing default on the part of the buyers. It is true that if permitting the mortgagee to exercise a right of acceleration in a particular case would be inequitable, a court of equity is not helpless to fashion appropriate relief. But, in such case, the mortgagor must first plead and then prove such facts entitling the mortgagor to such relief. See, *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980). See, also, *Timmerman v. Hertz*, 195 Neb. 237, 238 N.W.2d 220 (1976); *Kansas-Nebraska Nat. Gas Co., Inc. v. Hawkeye-Security Ins. Co.*, 195 Neb. 658, 240 N.W.2d 28 (1976). In the instant case the mortgagors neither pleaded nor

proved any facts which would have justified the district court to grant such extraordinary relief. Therefore, even though this was an action to foreclose and, therefore, was in equity, it was not inequitable in the instant case for the district court to make buyers accept the consequences of their action.

As we noted in *Shelby v. Platte Valley Public Power and Irrigation District*, 134 Neb. 354, 370, 278 N.W. 568, 575 (1938): " 'The maxim that he who comes into equity must come with clean hands is a cardinal one. It touches to the quick the dignity of a court of conscience itself. . . .' " And as we further observed in *Voichoskie v. Voichoskie*, 215 Neb. 775, 777, 340 N.W.2d 442, 444 (1983):

> " 'Whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' "

Neither could the fact that the sellers accepted payment of principal and interest due to them be considered as a waiver of the default resulting from buyers' failure to pay the taxes when due or the acceleration caused by that default. Had the owners intended to waive the default, the contract made provision therefor. It provided in paragraph 11 of the agreement that

> if [Buyer] fail[s] to pay any taxes or assessments levied or assessed against the real estate . . . Owners *may* pay said taxes . . . and the amount so paid shall become due and payable forthwith by Buyer to Owners without notice or demand and shall become a part of the principal balance due under this contract.

(Emphasis supplied.) The sellers did not make such payment and in no way waived the default caused by Burr's failure to pay the 1979 taxes.

The acceptance by sellers of the principal payments due was unrelated to the act which entitled the sellers to accelerate the balance due, and so long as the default continued, no other unrelated act by sellers could be deemed to have waived the acceleration. In order to establish a waiver of a legal right, there

must be clear, unequivocal, and decisive action of a party showing such a purpose, or acts amounting to estoppel on his part. See *Garden City Production Credit Assn. v. Lannan*, 186 Neb. 668, 186 N.W.2d 99 (1971). The fact that the sellers included the delinquent taxes for 1979 in their letter of February 18, 1983, did not in any manner indicate that they had previously waived the acceleration. They were simply attempting to include all of the matters that were now in default, including the 1979 taxes which had not been paid within 90 days of notice.

The fact that Burr made payment after suit was filed affords him no relief. Since the default caused by Burr's failure to pay the 1978 and 1979 real estate taxes within 90 days after receiving the first notice entitled the sellers to accelerate the entire remaining balance, and that acceleration was never waived prior to the sellers' exercising their remedy to foreclose, payment by Burr of the taxes after suit was filed was ineffective. We have long held that the payment of delinquent taxes after the commencement of an action to foreclose a mortgage does not deprive the mortgagee of the right secured by the exercise of his option. See, *Plummer v. Park*, 62 Neb. 665, 87 N.W. 534 (1901); *Hockett v. Burns*, 90 Neb. 1, 132 N.W. 718 (1911). The determination by the district court that a default had occurred, notice of which had been given and which had not been cured within 90 days, thereby entitling the sellers to foreclose the property, was in all respects correct. The judgment is affirmed.

AFFIRMED.

BOSLAUGH, J., concurs in the result.