WIECZOREK, Respondent, v. FARMERS' MUTUAL HAIL INSURANCE ASSOCIATION, Appellant.

(247 N. W. 895.)

(File No. 7292. Opinion filed April 18, 1933.)

212

*Hitchcock, Sickel & Whiting,* of Mitchell, and *Hal W. Byers,* of Des Moines, Iowa, for Appellant.

*Boyce, Warren & Fairbank,* of Sioux Falls, for Respondent.

ROBERTS, J. Plaintiff brought this action to recover upon a hail insurance policy. The policy was issued by the defendant, a mutual insurance company, on April 2, 1928, and was made to extend over a period of five years with an annual premium determined by such assessment as might be necessary to pay losses and expenses and levied after the losses for the year had been ascertained and determined. The plaintiff reported no loss for the year 1928, and the defendant claims that the policy had been suspended by nonpayment of the first year's assessment and was not in force on June 11, 1929, when the plaintiff sustained a loss by hail.

The contention of the defendant that the policy was not in force at the time of the loss is founded upon the provisions of section 10 of the by-laws of the company, which are made a part of the insurance contract. This section of the by-laws reads as follows:

"The Board of Directors shall levy and collect such assessments as may be necessary to pay losses and expenses and create and maintain such emergency fund for the payment of excess losses as to them may seem necessary to best protect the policies

of the members of this Association, and when the assessment is made, the Secretary shall immediately notify by mail each member of his share of the assessment; giving a list of losses adjusted at the time of preparing the notice and the names of parties sustaining the same and the member shall upon receipt of said notice, remit within thirty days to the Secretary, at Des Moines, Iowa, the amount of his assessment; and should he fail to do so, the Secretary shall give him a second notice, adding a penalty of 25 cents. And if a member fails to pay the assessment and penalty within sixty days of the date of the first notice, the Secretary shall, by registered letter, demand of such delinquent member the assessment and penalty, together with an additional penalty of 10 per cent., and it may be by civil suit collected by the Secretary on behalf of the Association, including both penalties and assessment and policies of the members of this Association on which the assessment and penalties remain delinquent or unpaid after 60 days from the date of the first notice shall be cancelled 5 days from the date of the registered letter provided for above and such member shall not be entitled to recover in case of loss during such delinquency. Upon the payment of the delinquent amount the policy shall be reinstated from the date of such payment unless otherwise ordered by the assured. * * * "

On October 2, 1928, the defendant sent to the plaintiff a notice of assessment for the year 1928, giving a list of losses adjusted and the names of persons sustaining losses, and stating that the amount of his assessment was $375. On November 10, 1928, the defendant mailed to the plaintiff a second notice which referred to the notice of October 2, stating the amount of the assessment, and requesting that it be paid. The sufficiency of the first two notices is not in issue. No response in the form of payment was made by the plaintiff, and the secretary of the defendant mailed to the plaintiff a second notice which referred to the notice of October 2, stating the amount of the assessment, and requesting that it be paid. The sufficiency of the first two notices is not in issue. No response in the form of payment was made by the plaintiff, and the secretary of the defendant company by registered mail sent the following notice and demand with the name of the insured, number of policy, and amount of assessment inserted:

"Third Notice.

"Dear Sir:

"Notice was sent to you October 2nd of your share of the assessment, and a second notice on November 10th. As yet you have failed to meet the obligation.

"At this time it becomes my duty as your secretary to register a third notice to you. The By-laws made by the original farmers who organized this association 36 years ago provide that a penalty of ten per cent must be added.

"Evidently the farmers of that time believed in penalizing themselves for failure to do their part and live up to their promises.

"Your secretary has no desire to collect that penalty, but the same by-laws made by these same original farmers put the secretary under a $20,000 bond to do his duty.

"However, as your collecting officer, I take it you are going to stand back of me if I go a little outside my authority and give you another chance. Therefore, I am saying to you right now that if this assessment is paid before December 27th, 1928, I will accept it and credit you full without the 10 per cent penalty.

"Further, the by-laws provide that this notice cancels your policy until this assessment is paid, but it is automatically reinstated upon the payment in full of said assessment.

"Your share of the assessment without the ten per cent penalty on Policy No. ——— is $——— and including the penalty it is $———.

"This amount should be remitted at once by postoffice money order, bank draft or personal check. Do not neglect and do not wait and have to pay the penalty."

It is the contention of the plaintiff that the by-laws prescribe and intend that affirmative action shall be taken by the officers of the defendant company to effect suspension of the policy at the expiration of 5 days after the giving of the third notice. Another provision of the by-laws, section 13, gives to the defendant company the right to cancel the policy without cause by giving 5 days' notice in writing to the insured. The by-laws intend that a policyholder should be given 5 days after the giving of the third notice to make payment of his assessment, but do not intend to

require a further notice to suspend the policy. The third notice states that "the by-laws provide that this notice cancels your policy until this assessment is paid." It directs attention to the provisions of the by-laws, and that the giving of the third notice operates to suspend the policy until the assessment is paid. The default of the plaintiff in the respect stated upon the giving of the three notices operated ipso facto to suspend the policy, and it is not material that the third notice did not affirmatively state that the policy was suspended. The trial court found that the defendant failed to give plaintiff a notice of forfeiture or cancellation as required by section 9191, Rev. Code 1919, as a condition precedent to the forfeiture of plaintiff's rights under the policy. The present action was determined prior to the rendition of the decision of this court in the case of Good v. Farmers' Mutual Hail Insurance Association of Iowa, 58 S. D. 106, 235 N.W. 114, wherein the same form of policy written by the same company was considered, and it was there held that section 9191 had no application to the policy, and, if a valid assessment was made and notice thereof given, plaintiff's failure to pay operated to suspend his policy.

The defense of suspension is met by a contention of a waiver on the part of the defendant company. The evidence discloses that in the fore part of May, 1929, the plaintiff gave to the defendant a check dated July 1, 1929, for $200 in part payment of the 1928 assessment. A letter dated June 20, 1929, and signed by the secretary of the defendant company, directed the attention of the plaintiff to the check in question, and stated that it would be deposited by the company on July 1, 1929, and that the plaintiff should arrange to have funds to make payment. On June 26, 1929, the secretary of the defendant company wrote the plaintiff as follows:

"My attention today is called to the fact that you have failed to pay your last year's assessment, and reinstate your policy.

"You were notified by registered letter in December that this policy was cancelled for the non-payment of the assessment and that it could not be reinstated until this assessment and penalties were paid in full.

"I notice you have given us a check dated 1st of July for part of this assessment, but this does not reinstate the policy. The

assessment must be paid in full before it can be reinstated. Therefore, your claim is being rejected."

The check was returned by the bank upon which it was drawn marked "insufficient funds." The plaintiff received a letter dated July 15, 1929, purporting to have been written by the attorney of the defendant company, directing the attention of the plaintiff to the return of the check, and stating that the check would again be presented for payment in ten days. On the same day a second letter was written to the plaintiff. This letter states:

"Your check for $200.00 drawn on the Mitchell National Bank of Mitchell, S. Dak. has been returned to us marked 'Insufficient Funds.'

"Your policy, A1983, is not in good standing and you have no protection under same and will not have until you make this check good.

"We accepted this check in good faith and carried your insurance up until the time the check was presented to your bank and payment refused. The giving of a bad check is not a settlement."

These communications of July 15, 1929, were sent to the plaintiff by a clerk in defendant's office. She testified that she was employed to look after the collection of returned checks; that certain form letters had been provided for her use; that she did not know at the time that the form letters in question were sent out that the check was for a partial payment; that they were forwarded without any specific instructions from any officer of the company or from its attorney; that, when a check given for a partial payment is returned unpaid, the instructions of the company have been to turn the check over to the defendant's attorney.

The by-laws, made a part of the insurance contract, stipulate that upon the payment of a delinquent assessment "the policy shall be reinstated from the date of such payment unless otherwise ordered by the assured." The amount of the delinquent assessment for 1928 was not paid; the policy was suspended by giving the required notices; and, if the defendant company did not by agreement or conduct waive the requirement of payment as a condition to reinstatement, plaintiff cannot prevail.

A waiver exists "where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the ma-

terial facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it." Noem v. Equitable Life Insurance Company, 37 S. D. 176, 157 N. W. 308, 309.

The testimony clearly shows that the letter, stating that the check which was dishonored was accepted in good faith and that the company carried the insurance until the same was presented and payment refused and upon which plaintiff relies, was sent to the plaintiff by a clerk in the office without the express direction of any officer of the company and by one not having sufficient knowledge of the facts. This letter was sent to the plaintiff after the loss had occurred and after express denial of liability by the company and dishonor of the check given in payment of a portion of the first year's premium. The company clearly did not intend by this letter to waive payment of the assessment as a condition to a reinstatement of the policy.

It is argued, however, that the letter in itself does not constitute the waiver, but evidences the intent of the defendant company to hold the policy of the plaintiff in full force and effect. Though the waiver was not expressed, but only to be implied from the facts, there is no evidence that the conduct of the defendant induced the plaintiff to act in reliance thereon. Where the waiver relied upon is implied from the conduct of the insurer it is essential that a course of conduct be shown which afforded the insured a just and reasonable ground to believe that the insurer regarded the insurance contract as being in force and that the insured has been misled to his prejudice. Thompson v. Knickerbocker Life Insurance Co., 104 U. S. 252, 26 L. Ed. 765. See, also, Labidee v. City of Pierre, 43 S. D. 31, 177 N. W. 499.

The judgment and order appealed from are reversed.

All the Judges concur.