**FIRST INDIANA FEDERAL SAVINGS BANK, Appellant (Defendant Below),**

v.

**MARYLAND DEVELOPMENT CO., INC., Appellee (Plaintiff Below).**

No. 49A–2–8605–CV–170.

Court of Appeals of Indiana, Second District.

June 30, 1987.

Rehearing Denied Oct. 13, 1987.

James P. Seidensticker, Jr., Theodore J. Nowacki, Bose McKinney & Evans, Indianapolis, for appellant.

Marvin Mitchell, Mitchell Hurst Pinkus Jacobs & Dick, Indianapolis, for appellee.

SHIELDS, Presiding Judge.

First Indiana Federal Savings Bank appeals the trial court's denial of its motion for summary judgment and the grant of summary judgment in favor of Maryland Development Co. Inc. We reverse.

### FACTS

On August 12, 1975, CWJ Realty Co. executed a note and mortgage in the amount of $1,500,000 in favor of First Indiana covering certain commercial real estate located in Marion County, Indiana. The note contained the following "prepayment" provision:

> "If, prior to twelve (12) years after date, any portion of the original principal sum is prepaid in any single contract year, a prepayment charge shall be paid by the undersigned [CJW] in an amount equal to one (1) year's interest on the principal balance outstanding immediately prior to the prepayment. Thereafter, payment of principal may be made without penalty."

Record at 17. The mortgage incorporated the terms of the note by reference.

On August 16, 1976, CWJ obtained First Indiana's written consent to the sale of the commercial property to Connecticut General Life Insurance Company. Connecticut did not assume the mortgage but rather took title "subject to" the mortgage.[1]

---

1. Under an assumption the grantee assumes personal liability for the mortgage debt, whereas a grantee who only takes title "subject to" the mortgage assumes no personal liability and the mortgagee is limited to foreclosure of the property and any action against the original mortga-

Sometime in June of 1983, Connecticut entered negotiations with Maryland concerning Maryland's purchase of the property. On September 15, 1983, Connecticut and Maryland executed a purchase agreement. The agreement contained two options for payment of the purchase price. Under Option I, Maryland would assume the First Indiana mortgage or take title subject to the mortgage and pay Connecticut in cash the difference between the sale price and mortgage balance. Under Option II, Maryland would pay the purchase price in cash and also pay "any penalty or other charges payable in connection with prepayment of the Mortgage" (Record at 278). Maryland conditioned its obligation to purchase the property upon its ability to obtain "within 120 days of the date hereof, an agreement from the holder of the Mortgage to waive any prepayment penalties or charges" (Record at 281).

On September 20, 1983, William E. Linville, representing Connecticut, sent a letter to First Indiana advising Connecticut had entered a purchase agreement with Maryland and Maryland had expressed interest in assuming the mortgage. Then, Linville specifically inquired whether First Indiana would permit Maryland to take the property subject to the mortgage or would require a payoff upon the sale. On October 13, First Indiana advised Linville by letter it had "no interest in refinancing"[2] (Record at 51) the mortgage, and provided the procedure for obtaining a payoff figure.

There was no further contact between First Indiana and Maryland or Connecticut until the first week in January when Linville requested and received a payoff figure by phone followed by a payoff amount letter.[3] On January 13, Maryland met with First Indiana to discuss the prepayment charge. Maryland insisted the charge was improper and advised it might purchase the property subject to the mortgage without First Indiana's consent and let First Indiana accelerate the balance due or foreclose. However, on January 24, Maryland purchased the property and paid the mortgage in full. It also paid the prepayment charge under protest. Subsequently, Maryland filed suit seeking reimbursement of the prepayment charge. The trial court granted Maryland's motion for summary judgment, denied the motion filed by First Indiana, and entered judgment against First Indiana for the amount of the prepayment charge plus interest.

## ISSUE

The issue on appeal is whether, as a matter of law, Maryland is entitled to a refund of the prepayment charge it paid under protest.

## DISCUSSION

When reviewing the grant and denial of a summary judgment motion, the Court of Appeals applies the same standard applicable in the trial court. *Ayres v. Indian Heights Volunteer Fire Dept.* (1986), Ind., 493 N.E.2d 1229. Summary judgment is appropriate only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Indiana Rule of Trial Procedure 56(C); *M & K Corp. v. Farmers State Bank* (1986), Ind.App., 496 N.E.2d 111.

On appeal First Indiana argues the note and mortgage provide for the collection of

gor. *Hewitt v. Powers* (1882), 84 Ind. 295; *Cook v. American States Ins. Co* (1971), 150 Ind.App. 88, 275 N.E.2d 832; *Mutual Benefit Life Ins. Co. v. Lindley* (1933), 97 Ind.App. 575, 183 N.E. 127.

2. Refinancing refers to the making of another loan or a larger loan on fresh terms. *Webster's Third New International Dictionary* (unab. ed. 1976) p. 1908. Thus, First Indiana did not explicitly respond to Maryland's specific inquiry whether First Indiana would consent to the sale, *i.e.,* would permit Maryland to take subject to the mortgage. Maryland, in its appellate argument, assumes it was denied permission. First Indiana does not address the question. However, because consent is not material due to our resolution of the acceleration issue, we assume First Indiana did not consent.

3. The pay-off figure first communicated by telephone to Linville, in response to Linville's telephoned request, did not include the prepayment charge. This omission was corrected by a second communication on the same day. In addition, a written pay-off letter, dated January 6, 1984, included the prepayment charge.

a prepayment charge when any portion of the mortgage balance is prepaid within twelve (12) years of its inception. Therefore, it asserts the trial court erred, as a matter of law, in granting judgment in favor of Maryland. Maryland argues the trial court's judgment is correct because the prepayment clause conditions were not met. Specifically, Maryland argues its payment of the mortgage balance was not a prepayment because it was not voluntary and further, the payment was the consequence of First Indiana's acceleration of the balance.[4]

### A. Voluntariness of Prepayment

■ Facially, Maryland's payment of the principal balance of the mortgage falls within the plain meaning of the prepayment clause. Payment of that balance is indeed payment of "any portion of the original principal sum ... in [a] single contract year." Record at 17. According to *Webster's Third New International Dictionary* (unab. ed. 1976) p. 1971, to "prepay" is "to pay in advance," and a "prepayment" is "payment in advance." Inasmuch as previous payments upon the principal had been made, the payment of the balance in full constitutes a "portion of the original principal sum." Record at 17. In addition, that payment occurred within twelve (12) years of the inception of the mortgage and in a single year.

However, Maryland argues its payment of the principal in full was not a "prepayment" because its payment was involuntary. In support of this proposition, Maryland cites decisions holding prepayment charges are not collectable when payment results from the destruction of the mortgaged property through a casualty (*Chestnut Corp. v. Bankers Bond & Mortgage Co.* (1959), 395 Pa. 153, 149 A.2d 48) or the exercise of the power of eminent domain.

*Land Ohio Corp. v. Northwestern Mutual Life Mortgage and Realty Investors* (1976), N.D.Ohio, 431 F.Supp. 475; *Jala Corp. v. Berkeley Savings & Loan* (1969), 104 N.J.Super. 394, 250 A.2d 150. Extending this principle, Maryland claims its payment was involuntary because First Indiana refused to permit Maryland to assume or take the property subject to the outstanding mortgage which, in turn, compelled Maryland to pay the principal balance of the mortgage to acquire the subject real estate.

We find Maryland's argument unpersuasive. Unlike a situation involving a fire or condemnation, where the early payment of the mortgage results from acts totally outside the control of the mortgagor, the circumstances which led to the prepayment of the mortgage arose directly from Maryland's free and voluntary decision to purchase the mortgaged property from Connecticut. Maryland voluntarily entered in the purchase agreement with full knowledge of the recorded mortgage, including the prepayment charge provision. Indeed, the purchase agreement itself specifically recognizes the prepayment provision in its purchase options and further conditions Maryland's obligation to purchase the property upon obtaining a waiver of the prepayment charge. Business considerations, circumstances within Maryland's control, are not a basis for invoking the protections accorded casualty losses or losses due to eminent domain. *Accord Berenato v. Bell Savings and Loan Association* (1980), 276 Pa.Super. 599, 419 A.2d 620.

### B. Acceleration

Maryland also argues its payment of principal was not a "prepayment" because First Indiana accelerated the mortgage by refusing to consent to an assumption or a subject to sale.[5] Upon acceleration the entire balance became due and therefore, Ma-

---

4. Both parties to this appeal agree federal law does not pose an impediment to the enforcement of prepayment clauses in commercial mortgages. Further, while they agree there is no *per se* prohibition in state law, they also acknowledge an involuntary payment and payment pursuant to acceleration falls outside the scope of a prepayment clause that does not specifically include those two occurrences.

5. The mortgage contained an "acceleration" clause which permitted First Indiana, at its option, to declare the principal balance immediately due and payable upon the occurrence of an event of default. The mortgage defined as an event of default "the conveyance, sale or attempted sale of the Mortgaged Property by the Mortgagor unless first approved in writing by the Mortgagee...." (Record at 252).

ryland did not "prepay" the principal but rather simply paid the balance due.

As authority for this proposition Maryland cites *Matter of LHD Realty Corp.* (1984), 7th Cir., 726 F.2d 327; *Slevin Container Corp. v. Provident Federal Savings and Loan Assoc. of Peoria* (1981), 98 Ill.App.3d 646, 54 Ill.Dec. 189, 424 N.E.2d 939; and *McCarthy v. Louisiana Timeshare Venture* (1983), La.App., 426 So.2d 1342. These decisions hold a mortgagee may not collect a prepayment charge when it exercises its discretion to accelerate the maturity date of a note because acceleration, by definition, advances the maturity date of the debt, and, as a result, payment is not a prepayment but rather a payment made at or after maturity. However, these opinions also adhere to a principle of Indiana law which requires a mortgagee's election to accelerate to be clear, unequivocal and without doubt as to the mortgagee's intention. *Matter of LHD Realty*, 726 F.2d at 331; *First Federal Savings and Loan Assoc. of Gary v. Stone* (1984), Ind. App., 467 N.E.2d 1226, 1232. Thus, in *Slevin* and *McCarthy*, the mortgagee clearly and unequivocally elected to accelerate when it sent written notice to the mortgagor expressing its intention to accelerate, and in *Matter of LHD Realty* the appellate court held the trial court properly found the mortgagee accelerated when it petitioned the bankruptcy court for relief from automatic stay in order to proceed with foreclosure. Therefore, assuming Connecticut's execution of the purchase agreement constituted a technical default and triggered First Indiana's right to accelerate, the issue is whether First Indiana clearly and unequivocally exercised its option to accelerate the mortgage. The undisputed facts and reasonable inferences therefrom reveal First Indiana did not accelerate.

■ There is conspicuously absent from the record evidence First Indiana accelerated the mortgage. For example, there is no evidence First Indiana sent notice or otherwise communicated any intention to accelerate to Maryland, Connecticut, or CWJ, the mortgagor. Nor is there evidence First Indiana refused to accept the scheduled principal and interest payments

between October and January or instituted foreclosure proceedings. Indeed, Maryland's claim an acceleration occurred rests solely upon First Indiana's refusal, pursuant to its mortgage contract, to consent to an assumption or subject-to sale. A mortgagee's mere refusal to consent to an assumption or subject-to sale is insufficient, as a matter of law, to establish a clear, unequivocal intention to accelerate. *First Federal S & L of Gary*, 467 N.E.2d at 1232.

■ In fact, here, the uncontradicted evidence is First Indiana did not accelerate. It had no contact with either Maryland or Connecticut between the October phone conversation and correspondence with Linville and Linville's request for a payoff in early January. Further, the undisputed evidence is it is First Indiana's policy, in the event of a transfer of ownership without its consent, to gather all pertinent facts and then evaluate each case individually before deciding whether to accelerate. In addition, at the January 13 meeting with the bank, Maryland told First Indiana it might purchase the property without First Indiana's consent and then just "let [First Indiana] foreclose or accelerate" (Record at 389). These facts not only show First Indiana had not, as of January, accelerated the mortgage, but they also reveal Maryland itself viewed acceleration as a prospective action First Indiana might take in the future rather than an action it had taken.

The trial court erred in granting Maryland judgment.

## II.

■ Because the conditions precedent to the invocation of the prepayment clause exist as a matter of law, the trial court also erred in denying First Indiana's motion for summary judgment. Maryland argues the trial court properly denied First Indiana's motion for summary judgment because genuine issues of material fact exist. It contends First Indiana cannot recover under the prepayment clause because it is estopped from so doing, because it did not act in good faith, and because it breached a fiduciary duty.

Underlying all of Maryland's arguments is the assumption First Indiana owed it a

duty. However, the undisputed facts belie this assumption. First Indiana did not have a contractual relationship with Connecticut or Maryland as neither entity had assumed the mortgage. The parties to the mortgage were First Indiana and CWJ Realty Co., and it is CWJ who was contractually obligated to First Indiana to pay any amount due and to whom First Indiana owed any duty. Further, the mortgage was recorded in the public records and the purchase agreement reveals both Maryland and Connecticut had actual knowledge of the prepayment provision. Finally, there is no evidence Maryland in any way changed its position or detrimentally relied upon First Indiana's initial silence regarding collection of the prepayment amount or its payoff figures. Accordingly, the trial court erred in denying First Indiana's motion for summary judgment.

### CONCLUSION

The judgment of the trial court granting Maryland's motion for summary judgment is reversed and this cause remanded with instructions to the trial court to grant judgment for First Indiana in the appropriate amount.

YOUNG and SULLIVAN, JJ., concur.