Nancy PHIPPS, Plaintiff and Appellant,

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BERESFORD, James F. Weber, President, Defendant and Appellee.

No. 15958.

Supreme Court of South Dakota.

Considered on Briefs Oct. 11, 1988.

Decided April 12, 1989.

Charles F. Carbiener, Vermillion, for plaintiff and appellant.

Phillip O. Peterson of Frieberg, Peterson & Travis, Beresford, for defendant and appellee.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Plaintiff/Appellant Nancy Phipps (Phipps) initiated an action in the circuit court for Clay County against Defendant/Appellee First Federal Savings and Loan Association of Beresford (First Federal) alleging, in separate counts, "negligence by statute" and breach of contract. Phipps' claims arose from First Federal's refusal to accept her attempts to cure default on a 180–day redemption mortgage and related mortgage note on a house. This refusal, she argued, prevented her acceptance of a bona-fide offer to purchase the house. For relief, Phipps sought (1) $55,000 in compensatory damages, (2) $10,-000 in exemplary damages, (3) excuse of performance on the principal and interest due, (4) complete satisfaction of the mortgage, (5) attorney fees, and (6) prejudgment interest. In turn, First Federal filed a counterclaim seeking foreclosure and a deficiency judgment, arguing that it had accelerated Phipps' loan prior to her attempts to cure her default.

The trial of this matter was to the court. At the end of the trial, First Federal, with Phipps' consent, was granted permission to submit, later, an appraisal to establish the current value of the house. The trial court, off the record shortly thereafter, indicated that judgment would be issued in Phipps' favor. First Federal did not submit its valuation evidence until after the trial court issued its memorandum opinion which, contrary to its earlier pronouncement, then favored First Federal. The trial court allowed submission of this late evidence under SDCL 15–6–60(b), South Dakota's excusable neglect statute.

Phipps has appealed, asserting that the trial court erred in six regards, and urges:

1) She had a right, under SDCL 21–47–8,[1] to cure her current defaults at any time prior to entry of judgment;

2) First Federal waived its right to accelerate Phipps' payments;

3) Evidence was insufficient to support a finding that First Federal had given Phipps clear and unequivocal notice of its decision to accelerate her payments;

4) Evidence was insufficient to support a finding that Phipps' default was the result of her own conduct;

5) The trial court abused its discretion in reopening the case to allow First Federal to submit additional evidence; and

6) Evidence was sufficient to support an award of damages to Phipps for inequitable and unconscionable conduct by First Federal.

We affirm, treating all alleged errors seriatim.

## FACTS

An appreciation of the crucial facts are vital to our consideration. On June 26, 1980, Phipps purchased a house in Vermillion, assuming an existing 180–day mortgage secured by a mortgage note. First Federal was mortgagee. Phipps was required to make a principal and interest payment on the first day of each month in the amount of $303.72. The mortgage note contained the following provision:

If any deficiency in the payment of any installment under this note is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

The mortgage by which the note was secured also contained an acceleration clause:

Upon a default in the payment of any indebtedness hereby secured or in the performance of any of the terms or conditions hereof the entire indebtedness

---

1. SDCL 21–47–8 provides:

Whenever an action shall be commenced for the foreclosure of a mortgage upon which there shall be due any interest or any portion or installment of the principal, and there shall be other portions or installments to become due subsequently, the complaint shall be dismissed upon the defendant bringing into court at any time before entry of judgment the principal and interest due, with costs and disbursements.

hereby secured shall, at the option of the Mortgagee, immediately become due and payable, and this mortgage may be foreclosed by action, or by advertisement as provided by Statute or the Rules of Practice relating thereto, and this paragraph shall be deemed as authorizing and constituting a power of sale as mentioned in said statutes or rules, and any amendatory thereof. THE PARTIES AGREE THAT THE PROVISIONS OF THE ONE HUNDRED EIGHTY DAY REDEMPTION MORTGAGE ACT GOVERN THIS MORTGAGE

Another paragraph in the mortgage indicated that "Mortgagor waives notice of the exercise of any option granted to Mortgagee herein, or in said note, and waives and relinquishes all rights of homestead in said premises."

Phipps' payment history was erratic. She developed a pattern of missing one month's payment, then paying two or more installments together during the following month. For example, on October 21, 1982, she paid her installments due in September, October, and November of that year. She testified that she was too busy to pay her bills on time. Phipps was a medical doctor. We note, in the record that, no less than ten times, she was delinquent in her payment over a period of three years. First Federal sent written notices of her delinquencies, with no effect. On August 4, 1983, First Federal received a check of $1,167, for Phipps' installments due in August, September, and parts of July and October of 1983. This check was returned to First Federal on August 22, 1983, for insufficient funds. This return was apparently caused by an earlier error by Phipps' Texas bank.

First Federal mailed a letter to Phipps, dated August 22, 1983, requesting that she send a certified check or money order for $1,172 ($1,167 plus a $5 service fee), same to pay for her insufficient funds check, which was to be received at First Federal no later than September 30, 1983. Because of Phipps' dishonored check, which represented all or part of four monthly installments, her erratic payment record, and distant address, First Federal attempted to contact her by telephone, but was informed

that her line was disconnected. Also, in late August, a default notice, dated August 25, 1983, mailed to Phipps' Texas address, was returned to First Federal with notation that no such person lived there. James Weber, a vice-president of First Federal, telephoned Phipps' realtor, Sue French of French Realty, in Vermillion. No new address for Phipps was provided to Weber, as her new Rapid City address had not been put in French Realty's files.

On August 24, 1983, French called Weber to inform him that a potential buyer was, as French phrased it at trial, "very interested in assuming the loan or possibly going on a contract for deed." Weber responded that the loan could not be assumed because Phipps had defaulted and her loan had been accelerated. Although the potential buyer had given French a $1,000 check as "earnest money," an "Offer and Agreement to Purchase," quoting a purchase price of $45,000 prepared by French, was never signed by the buyer. The buyer rented Phipps' house for a period, and eventually left the Vermillion area.

Two days after Weber informed French that Phipps' loan was not assumable, Phipps visited French's office. Phipps immediately called Weber, who told her that her loan was accelerated, but that a new loan might be arranged. Phipps offered to cure the default with funds from a Rapid City bank, but First Federal refused her overtures, which, she claimed, prevented her acceptance of the buyer's bona fide offer to purchase.

Phipps' arguments that she had a right, under SDCL 21-47-8, to cure her default, that First Federal had waived its right to accelerate the loan by tolerating previous late payments, and that First Federal had not given Phipps notice of its intent to accelerate, were rejected by the trial court. This appeal followed.

### DECISION

I. UNDER SDCL 21-47-8, DID PHIPPS HAVE A RIGHT TO CURE HER DEFAULTS AT ANY TIME PRIOR TO ENTRY OF JUDGMENT?

■ Phipps first argues that SDCL 21-47-8, applies to foreclosures of short-term

redemption mortgages. This statute directs dismissal of mortgage foreclosure actions if the defendant, prior to entry of judgment, brings into court the principal and interest due plus costs and disbursements. We disagree.

SDCL 21-49-11 provides:

Any mortgage made pursuant to this chapter on real property of an area of not more than forty acres containing therein a power of sale, upon default being made in the conditions of the mortgage, may be foreclosed as provided in chapter 21-47 *or* 21-48 *or* as provided in this chapter. Any mortgage made pursuant to §§ 21-49-1 to 21-49-10 prior to July 1, 1977 may be foreclosed as provided therein or as provided in this section. (Emphasis added.)

According to the above statute, the procedures set out in SDCL chs. 21-47, 21-48, and 21-49 are alternatives. The provisions of SDCL ch. 21-47, including SDCL 21-47-8, do not apply here, as foreclosure was sought under SDCL ch. 21-49. This result is warranted by the degree of redundancy between these chapters, as exemplified by SDCL §§ 21-47-3 and 21-49-17, which both authorize the foreclosing court to enter judgment against any person other than the mortgagor who is obliged under the mortgage debt. Such redundancy is inexplicable if, as Phipps argues, the provisions of SDCL ch. 21-47 were intended to apply to foreclosure under SDCL ch. 21-49.

The mortgage in question provided, at paragraph 9, that "THE PARTIES AGREE THAT THE PROVISIONS OF THE ONE HUNDRED EIGHTY DAY REDEMPTION MORTGAGE ACT GOVERN THIS MORTGAGE." "The terms which were agreed upon by both parties should be complied with and enforced unless they conflict with the applicable law." *First Fed. Sav. & Loan Ass'n of Sioux Falls v. Dardanella Financial Corp.,* 351 N.W.2d 460, 462 (S.D.1984). SDCL ch. 21-49 is the applicable law. These chapters, SDCL 21-47, 21-48, and 21-49, are independent and complete in themselves. *See, e.g., Lien v. Rowe,* 77 S.D. 422, 427, 92 N.W.2d 922, 925 (1958) (concerning tax statutes). No "doc-

trine of redundancy" has been mentioned or adopted by the majority; rather, this creative phrase is coined by the minority viewpoint. We fully appreciate that our duty is one of statutory construction and ascertaining underlying legislative purpose. In this instance, our case holding is that these separate chapters are independent and complete in themselves, although bearing the same title number, as in *Lien, supra.* This conforms to the legislative intent evident in SDCL 21-49-11, which provides that these chapters are *alternatives.* No new doctrine is created hereby. We affirm the trial court on this issue.

## II. WAIVER OF THE RIGHT TO ACCELERATE PAYMENTS?

■ Phipps next argues that First Federal's letter of August 22, 1983, requesting payment of $1,172, constituted waiver of its right to accelerate her payments prior to September 30, 1983. This is unsound.

In 1982, this Court wrote that waiver exists "where one in possession of any right, whether confirmed by law or contract, and with full knowledge of the material facts, does or forbears something inconsistent with the existence of the right or of his intention to rely on it." *Western Cas. & Sur. Co. v. American Nat'l Fire Ins. Co.,* 318 N.W.2d 126, 128 (S.D.1982) (quoting *Wieczorek v. Farmers' Mut. Hail Ins. Ass'n,* 61 S.D. 211, 216-17, 247 N.W. 895, 897 (1937)). *See also Noem v. Equitable Life Ins. Co.,* 37 S.D. 176, 180, 157 N.W. 308, 309 (1916). The record does not support an inference that First Federal was aware that Phipps was no longer in Texas. This was a material fact, from First Federal's point of view. There is an obvious difference between a debtor of fixed abode and one that is unlocated. As full knowledge of the material facts by First Federal was lacking, one of the elements of waiver, set out in *Western Casualty, supra,* is missing. No waiver occurred.

■ Nor can waiver be based upon First Federal's forbearance regarding Phipps' earlier delinquencies in payment, because the mortgage contained an anti-waiver clause providing that failure to exercise the

acceleration option did not constitute a waiver of First Federal's right to exercise it in the event of future defaults. Even without the anti-waiver clause, reinstatement of a "time is of the essence" clause is not necessary where there is a history of late payment and letters of objection from the mortgagee. *Miller v. Uhrick,* 146 Ariz. 413, 415, 706 P.2d 739, 741 (App.1985), *affirmed,* 146 Ariz. 511, 707 P.2d 309 (1985). Here, we note that First Federal did not passively sit by; it sent written notices of delinquencies, made phone calls, and wrote letters in attempts to make Phipps comply with her agreement. Further, Phipps had never before tendered a bad check.

## III. SUFFICIENCY OF EVIDENCE TO ESTABLISH CLEAR AND UNEQUIVOCAL NOTICE OF INTENT TO ACCELERATE.

■ Phipps next argues that evidence was insufficient to support the trial court's finding of fact to the effect that First Federal gave clear and unequivocal notice of acceleration unto her. The general rule regarding such notice is set out in 55 Am. Jur.2d *Mortgages* § 386, at 431 (1971):

[W]here the acceleration of the maturity of a mortgage debt is made optional with the mortgagee, some affirmative action must be taken by him evidencing his election to take advantage of the accelerating provision, and that until such action has been taken the provision has no operation. The exercise of the option should be made in a manner clear and unequivocal, so as to leave no doubt as to the mortgagee's intentions.

*See also City Sav. Bank of Bridgeport v. Dessoff,* 3 Conn.App. 644, 491 A.2d 424 (1985).

Phipps bases her argument that First Federal's action was not clear and unequivocal on Mr. Weber's statement, in their telephone conversation, that the parties might be able to negotiate a new loan. This new loan, if agreed upon, was predicated on termination of the existing mortgage. Phipps' own trial testimony indicated that she understood Weber to mean that the old loan was accelerated. First Federal's refusal to accept further payments, combined with Phipps' understanding of the telephone conversation, indicate that First Federal gave effective notice to Phipps. While mere refusal to consent to assumption of a mortgage is insufficient, as a matter of law, to establish clear and unequivocal intention to accelerate, see *First Indiana Fed. Sav. Bank v. Maryland Dev. Co., Inc.,* 509 N.E.2d 253, 259 (Ind.App.1987), First Federal backed its refusal with an oral declaration of acceleration. These actions, without reference to First Federal's refusal to accept further payments, are clear and unambiguous.

Phipps did not question, below or in this appeal, whether First Federal's notice to her was sufficient under SDCL 21–49–13,[2] which provides that short-term redemption mortgages *may* contain provisions "relating to" acceleration "upon twenty days notice to the mortgagor," which notice may be given "concurrently with any notice of the mortgagor's right to cure existing defaults." We therefore deem any such argument waived. An objection not properly raised, briefed, or argued on appeal is deemed abandoned, and we, the reviewing court, will not consider it. *Johnson v. John Deere Co.,* 306 N.W.2d 231, 239 (S.D. 1981).

**2.** SDCL 21–49–13 provides, in pertinent part:
In particular, but without limitation, any mortgage subject to the provisions of this chapter, may contain provisions relating to:
(1) In the case of default in the payment of the principal sum of money, or any part thereof, or interest thereon at the time specified for payment thereof, or in the case of nonpayment of any taxes, assessments, or insurance as required, or of breach of any covenant or agreement contained in the mortgage, then, the total debt, principal and interest, shall at the option of the holder of the mortgage, immediately become due and payable, upon twenty days notice to the mortgagor. The notice may be given concurrently with any notice of the mortgagor's right to cure existing defaults. Thereafter the mortgage may be foreclosed, as provided in this chapter;

*   *   *   *   *   *

The notice requirements of this section shall be satisfied when the notice is deposited in the United States mail, registered or certified mail, return receipt requested, and addressed to the last known address of the mortgagor.

Reviewing the evidence in the light most favorable to the trial court's findings and resolving all conflicts in the evidence in its favor, we affirm the trial court on this issue.

## IV. SUFFICIENCY OF EVIDENCE THAT PHIPPS' DEFAULT WAS THE RESULT OF HER OWN CONDUCT

■ The trial court's Finding of Fact No. 10 indicated that Phipps' default was the result of her own conduct (its memorandum opinion stated that the default was the result of her own acts, or those of her Texas bank). Phipps now argues that this finding was clearly erroneous. We disagree. A mortgagor will not be relieved when an acceleration clause is enforced because of default caused by his negligence, mistake, or *accident* in the absence of fraud, bad faith, or other conduct on the part of the mortgagee which would make it unconscionable to avail himself of the clause. *See First Fed. Sav. & Loan Ass'n of Phoenix v. Ram*, 135 Ariz. 178, 659 P.2d 1323 (Ariz.App.1982). In any event, Phipps' testimony revealed she was too busy (100 hour work weeks) to pay her bills on time, which supports the trial court's finding of fact. The trial court's finding was not clearly erroneous. *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

■ Phipps' failure to pay had, initially, nothing to do with any act by First Federal. The "generally prevailing rule" is that a tender of arrears made before the holder of a mortgage has exercised his option to make the entire amount due prevents the exercise of the option. 55 Am.Jur.2d *Mortgages* § 389 (1971). However, exercise of the option terminates the right of the mortgagor to compel acceptance by the mortgagee of the defaulted monthly payments. *Jones v. Burr*, 223 Neb. 291, 295–296, 389 N.W.2d 289, 293 (1986); *United Benefit Life Ins. Co. v. Holman*, 177 Neb. 682, 685–686, 130 N.W.2d 593, 596 (1964). Here, First Federal opted to accelerate before Phipps made any offer to cure her default, and she had defaulted before First Federal took any action.

## V. REOPENING THE CASE TO ALLOW ADDITIONAL EVIDENCE

■ The trial court reopened the case, after issuing its memorandum opinion, to allow First Federal's submission of additional evidence regarding the valuation of the property. This reopening was permitted because the court's own comments led First Federal to believe SDCL 21–47–8 applied, in which case submission of such evidence would be futile. In a letter to counsel announcing that the trial would be reopened, the trial court emphasized that First Federal requested permission to submit such evidence at a later date. The trial transcript indicates that Phipps acquiesced then.

SDCL 15–6–60(b) provides that a court may relieve a party or his legal representative from a final judgment, order, or proceeding for, among other things, "[m]istake, inadvertence, surprise, or excusable neglect;" or "[a]ny other reason justifying relief from the operation of the judgment." SDCL 15–6–60(b)(1) and (6). Such relief is addressed to the sound discretion of the trial court. *Overvaag v. City of Dell Rapids*, 319 N.W.2d 171 (S.D.1982). The term "excusable" neglect, while having no fixed meaning, is to be interpreted liberally to insure that cases are heard and tried on the merits. *Eby v. Misar*, 345 N.W.2d 381 (S.D.1984). First Federal's negligence was excusable, and, if the evidence was admitted, a judgment more favorable to it would result. *See Sohn v. Flavin*, 60 S.D. 305, 244 N.W. 349 (1932). Here, where it is apparent that the trial court's own utterances misled counsel, and the trial court acknowledged this, no abuse of discretion appears.

## VI. SUFFICIENCY OF EVIDENCE TO SUPPORT AN AWARD OF DAMAGES TO PHIPPS

Phipps' last argument is that she suffered damages as a result of losing a sale due to First Federal's violation of a statutory standard enacted for her protection (SDCL 21–47–8) which rendered First Fed-

eral negligent per se, relying on *Lovell v. Oahe Elec. Coop.*, 382 N.W.2d 396 (S.D. 1986). *Lovell* spoke to safety standards, as did *Stevens v. Wood Sawmill*, 426 N.W.2d 13 (S.D.1988). Application of negligence per se to this situation is inappropriate. Even were the concept applicable outside the safety context, SDCL 21–47–8 has no bearing on this case.

As First Federal was acting within its rights under the mortgage, Phipps has no valid claim to damages. The trial court's decision is affirmed.

WUEST, C.J., and MILLER, J., concur.

MORGAN and SABERS, JJ., dissent.

MORGAN, Justice (dissenting).

I dissent from the majority view wherein it is determined that, by a "doctrine of redundancy," the provisions of SDCL 21–47–8 are inapplicable to a mortgage executed under the provisions of SDCL ch. 21–49, the Short Term Redemption Act. The majority cites us to no supporting authority for the application of this doctrine.

With respect to the application of the doctrine of redundancy to this case, assuming that the Bank is proceeding under SDCL ch. 21–49, I find it noteworthy that SDCL 21–49–13(1) provides, in pertinent part: "The notice [of default] may be given concurrently with any notice of the *mortgagor's right to cure existing defaults*." (Emphasis added.) This statute appears to refer to the rights under SDCL 21–47–8, thus avoiding the so-called doctrine of redundancy.

I am authorized to state that Justice SABERS joins in this dissent.