2003 SD 154

Earl G. BOXA, Elizabeth Boxa, Brent Combs, as guardian ad litem for Johnathan L. Combs, Brent Combs, Jennifer Combs, Shirley A. Vosika, Polly Anne Cerney, Emil J. Cerney Estate, Marjorie Harrison, and Verne Ellston, Plaintiffs and Appellees,

v.

Paul VAUGHN, Paul Vaughn Insurance Inc., Defendants and Appellants,

and

Scott Vanderbeek, Defendant.

No. 22756.

Supreme Court of South Dakota.

CONSIDERED ON BRIEFS ON Oct. 6, 2003.

Decided Dec. 30, 2003.

J.M. Grossenburg, Winner, for plaintiffs and appellees.

Mark V. Meierhenry, Clint Sargent of Danforth, Meierhenry & Meierhenry, Sioux Falls, for defendants and appellants.

SABERS, Justice.

[¶ 1.] Plaintiff purchasers [1] brought suit against Paul Vaughn for damages, alleging that he sold purchasers unregistered business opportunities in violation of the Busi-

---

1. The original purchasers were Earl and Elizabeth Boxa, Jonathon, Brent and Jennifer Combs, Shirley Voskia, Polly Anne Cerney, the Emil J. Cerney Estate, Marjorie Harrison and Verne Ellston. Some of the plaintiffs were dismissed from the suit prior to trial. For ease of reading, those remaining will be referred to collectively as "Purchasers" or "Plaintiffs."

ness Opportunities Act (Act). SDCL 37–25A–7. Vaughn did not dispute that he sold the purchasers unregistered business opportunities but he raised the affirmative defenses of waiver and failure to mitigate damages. Purchasers moved for directed verdict at the close of Defendant's evidence arguing that (1) the affirmative defense of waiver was not permissible under the Act. The trial court agreed and granted purchasers' motion for directed verdict and found that (2) Defendant did not meet his burden to show Plaintiffs failed to mitigate damages. Vaughn appeals. We affirm (1) for a different reason and affirm (2).

### FACTS

[¶ 2.] Vaughn approached each of the Plaintiffs and offered them an investment opportunity with a 14.1% return. The plan was for Plaintiffs to purchase pay telephones for $7,000 each, and then lease them back to Phoenix Telecom which would pay Plaintiffs $82.25 per month. Each Plaintiff also entered into an "Option to Sell" agreement with Phoenix entitling Plaintiffs to terminate the lease at the end of five years and Phoenix would buy back the telephones for the original purchase price. Plaintiffs were told they could pull their money out of the plan at any time and that there was little risk in the investment.

[¶ 3.] Vaughn sold phones from September 1999 until January 2000 when he received a cease and desist order from the South Dakota Division of Securities (Division). The Division found that Phoenix's products were business opportunities which needed to be registered with the Division. Phoenix was also issued a cease and desist order. After the cease and desist orders were issued, the Division directed Phoenix to send an offer of rescis-

sion to the South Dakota purchasers. On March 3, 2000, Phoenix sent a letter to each Purchaser informing them that Phoenix had failed to register the product with the Division and that Plaintiffs were entitled to rescind their purchases. Agents were told by Phoenix to "contact each Lessor and advise them to expect the letter, and then reassure the client that they should not be alarmed upon receipt."

[¶ 4.] Plaintiffs testified that Vaughn urged them not to rescind, telling them that he would take care of the problem and encouraging them to hold on to their "investment." Although the parties dispute the reason why, each of the Plaintiffs chose not to rescind their contracts. By July of 2000, Phoenix could no longer make its lease payments to the Plaintiffs. Phoenix transferred its leases to ETS Payphones. Plaintiffs agreed to the transfer, but in September 2000, ETS stopped making lease payments. Phoenix and ETS have filed for bankruptcy.

[¶ 5.] On September 29, 2000, the SEC filed a complaint against ETS alleging that ETS engaged in fraud in the offer and sale of unregistered securities. In its complaint, SEC asserts that investors were not told ETS was losing money, had a negative net worth and was dependent on new investors to continue in business. The "investment opportunity" was actually a pyramid, or "Ponzi scheme" wherein Phoenix and ETS[2] used the money they received from later purchasers to pay earlier purchasers.

[¶ 6.] On October 19, 2000, the original Plaintiffs filed an amended summons and complaint against Vaughn for damages, alleging that he sold unregistered business opportunities in violation of SDCL 37–25A–7. The parties went to trial, and at the close of evidence, Plaintiffs moved for

---

**2.** The SEC believes that Phoenix and ETS are "very close."

a directed verdict on the basis that Vaughn's affirmative defense of waiver was not allowed under the Act. The trial court granted the motion, directed a verdict in Plaintiffs' favor, and entered a judgment for purchasers' statutory damages less lease payments received. Vaughn appeals raising two issues:

1. Whether the Business Opportunities Act's anti-waiver provision precludes the affirmative defense of waiver, and if not, whether waiver was established.

2. Whether Vaughn established that Plaintiffs failed to mitigate damages.

### STANDARD OF REVIEW

[¶ 7.] Our standard of review of a trial court's ruling on a motion for directed verdict is well settled:

A motion for a directed verdict under SDCL 15–6–50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse.

*Veeder v. Kennedy,* 1999 SD 23, ¶ 25, 589 N.W.2d 610, 617 (quoting *Border States Paving, Inc., v. S.D. Dep't of Transp.,* 1998 SD 21, ¶ 10, 574 N.W.2d 898, 901) (citations omitted). Whether claims brought under SDCL 37–25A–48 are subject to the affirmative defense of waiver is a question of statutory construction which this Court reviews de novo. In re Estate of Foss,

2001 SD 140, ¶ 5, 637 N.W.2d 30, 31 (citation omitted).

[¶ 8.] **1. WHETHER THE BUSINESS OPPORTUNITIES ACT'S ANTI– WAIVER PROVISION PRECLUDES THE AFFIRMATIVE DEFENSE OF WAIVER, AND IF NOT, WHETHER WAIVER WAS ESTABLISHED.**

[¶ 9.] SDCL 37–25A–7 provides:

No person may offer or sell any business opportunity in this state unless the business opportunity is registered under this chapter or is exempt under § 37–25A–3.

Vaughn concedes that by selling the payphone business opportunity to Plaintiffs, he violated SDCL 37–25A–7. Therefore, the only question is the extent he is liable to Plaintiffs.

[¶ 10.] SDCL 37–25A–48 provides in part:

Any person who violates §§ 37–25A–7, [ ] is liable to the purchaser who may sue either at law or in equity for rescission, for recovery of all money or other valuable consideration paid for the business opportunity and for actual damages, together with interest at the legal rate from the date of sale, reasonable attorney's fees and court costs.

When the Division discovered that Phoenix was in violation of SDCL 37–25A–7, it required Phoenix to offer all purchasers the option of rescinding the sales contract and recovering their investment. Phoenix complied with the demand and sent this letter to each purchaser:

It has been brought to our attention by the Director of the Division of Securities of the Department of Commerce and Regulation ... that business opportunities were sold by [Phoenix Telecom] prior to complying with all of the requirements of the South Dakota Business Opportunity Act.

Therefore, it is necessary at this time to inform you of your right to rescind your purchase from the above referenced company and we hereby offer to repurchase the interest sold for a purchase price equal to the full amount paid therefore, plus interest at an annual rate of 12 per cent per annum from the date of purchase. If you elect to rescind the offer, ownership of the payphones and equipment you purchased from Phoenix Telecom, L.L.C. must be transferred to Phoenix Telecom, L.L.C. as well as all rights and interests in those payphones and equipment.

If you elect to rescind the offer, you will be entitled to the receipt of $7,000.00 per unit plus interest less any income received from lease payments. Interest shall accrue from the date of purchase until the date of payment. If you accept the offer, payment will be made to you within thirty (30) days of receipt of your written acceptance.

This offer shall continue in force for thirty (30) days from the date on which this offer is received by you. Please notify our office of your decision to accept this offer of rescission by signing at the bottom of this letter and returning this letter to our office in the enclosed envelope. If we do not receive written notice from you accepting this offer of rescission before the expiration of thirty (30) days, we will presume you are refusing this offer and thus affirming your previous purchase from the above-referenced company.

None of the Plaintiffs accepted the offer to rescind. Vaughn argues that by failing to accept the offer within thirty days, Plaintiffs waived their right to recover against him under SDCL 37–25A–48. Plaintiffs counter that SDCL 37–25A–54 precludes Vaughn from asserting the affirmative defense of waiver. SDCL 37–25A–54 provides:

> Any condition, stipulation or provision binding any purchaser of a business opportunity to waive compliance with or relieving a person from any duty or liability imposed by or any right provided by this chapter or any rule or order issued pursuant to this chapter is void.

Relying on the reasoning of the Fifth Circuit Court of Appeals' decision in *Meyers v. C & M Petroleum*, 476 F.2d 427 (5th Cir.1973), the trial court determined that SDCL 37–25A–54 precludes sellers from utilizing the affirmative defense of waiver. However, the language of this statute is insufficient to support the trial court's holding that the affirmative defense of waiver is barred in any case where there is a violation of the Act.

■ [¶ 11.] The opening language which provides "any condition, stipulation or provision," clearly implies that the statute is prohibiting agreements between the parties that would waive any rights, remedies or liabilities under the Act. This is not the same as precluding the affirmative defense of waiver. Waiver is when "one in possession of any right, whether confirmed by law or contract, and with full knowledge of the material facts, does or forbears something inconsistent with the existence of the right or of his intention to rely on it." *Phipps v. First Federal Savings and Loan*, 438 N.W.2d 814, 817 (S.D.1989) (additional citations omitted). There are many instances when one could do something inconsistent with a known right without entering into an agreement to waive the remedies, rights and liabilities under the Act.

■ [¶ 12.] Chapter 37–25A does not specifically address the availability of affirmative defenses. "In South Dakota, the rules of common law are in force, except where they conflict with the will of the

sovereign power, which is expressed in the constitution, statutes and ordinances of the state." *McKellips v. Mackintosh*, 475 N.W.2d 926, 928 (S.D.1991) (citing SDCL 1–1–24). Absent statutory instruction to the contrary, affirmative defenses remain available to defendants. Therefore, SDCL 37–25A–54 does not unconditionally bar the affirmative defense of waiver. Instead, it prohibits sellers from (1) using contractual provisions waiving rights, remedies and liabilities under the Chapter as a shield to prevent buyers from recovering for wrongful activity under the Chapter; or (2) using those provisions as a sword to enforce contracts which are otherwise unlawful under the Act.

■ [¶ 13.] Vaughn asserts that the purpose of the anti-waiver provision of SDCL 37–25A–54 is "to prohibit sellers of business opportunities from circumventing the Act by entering into private agreements with purchasers during the *initial sales transaction* to waive compliance with the registration requirements of the act." (Emphasis in original.) This interpretation is correct as far as it goes, but too narrow, as the statute's language refers to "*any* condition, stipulation or provision" that binds "*any* purchaser" and covers "*any* duty or liability [ ] or *any* right" under the Chapter. There is nothing in the language of the statute which restricts its application to agreements made in the initial sales transaction or to the registration requirements of the Act. As the language provides, *any* agreement, made at any time during the course of the relationship to waive *any* requirement of the Act is void and unenforceable. Had Plaintiffs accepted the offer to rescind, they would have waived no rights, remedies or liabilities under the Act. The letter purported to offer Plaintiffs every statutory remedy and

right to which they were entitled against Phoenix under the Act at the time of the offer. The offer was rejected by Plaintiffs, and no "condition, stipulation or provision binding any purchaser" was created, therefore, the threshold requirement of the statute was not met. Since neither acceptance nor rejection of the offer would have waived anything under the Chapter, it does not fall within the anti-waiver provision.

■ [¶ 14.] Moreover, Vaughn did not establish that Plaintiffs waived their right to bring an action against him through rejection of this offer. The letter dealt only with the offer to rescind Purchasers' contracts with Phoenix.[3] Vaughn violated SDCL 37–25A–7 by selling an unregistered business opportunity in South Dakota. For this, he was independently liable to Purchasers under SDCL 37–25A–48, regardless of Phoenix and its successors' liability or non-liability. SDCL 37–25A–48 allows the purchaser to sue "any person" who violates the enumerated laws and does not preclude suit against both the actual seller and the company for whom he is selling. The letter offers Vaughn no protection from liability for his violations of SDCL 37–25A–7.

[¶ 15.] Vaughn also failed to establish the necessary elements to prove that Plaintiffs waived their right to recover against him. As we've noted, waiver is established when it is shown that "one in possession of any right, whether confirmed by law or contract, and with *full knowledge of the material facts*, does or forbears something inconsistent with the existence of the right or of his intention to rely on it." *Phipps*, 438 N.W.2d at 817 (additional citations omitted) (emphasis supplied). First, Vaughn has failed to show that

---

**3.** It is noteworthy that by the time the purchasers brought this suit against Vaughn,

Phoenix was insolvent and had been acquired by ETS, which also became insolvent.

through rejection of Phoenix's offer, Purchasers did anything inconsistent with their statutory right to bring suit against or recover from him. Second, Vaughn has failed to show that Purchasers had "full knowledge of the material facts" when they chose not to rescind their contracts after receipt of the letter. On the contrary, it appears that Phoenix, with Vaughn's assistance, did everything in its power to convince Purchasers that there was nothing more than a technical glitch in their operations. Purchasers had no indication at the time they received the letter that the company was incapable of continuing payments. Certainly the fact that bankruptcy was imminent was a "material fact" which Purchasers needed to know in order to waive their right to civil recovery.

[¶ 16.] Vaughn contends that he was an unwitting seller of the unregistered business opportunity, and as such, it is unfair to leave him responsible for the full statutory damages. However, as between the innocent purchasers, whom the Act seeks to protect, and the seller engaged in unlawful practices, it is clear the seller should bear the burden of the Act. Moreover, the provision under which Vaughn is liable does not limit liability to those who knowingly or willfully violate the Act.[4] In addition, under the judgment, Vaughn is only liable to lessors for statutory damages less lease payments received from Phoenix or ETS. Finally, nothing precludes Vaughn from suing Phoenix, ETS and their agents for contribution. In fact, Vaughn has done so.

[¶ 17.] We hold that although the Act permits a seller of a business opportunity to assert the affirmative defense of waiver, Vaughn's attempt to do so in this case fails on the merits. There being no evidence to sustain Vaughn's affirmative defense of waiver, we affirm the directed verdict in favor of Plaintiffs.

[¶ 18.] **2. WHETHER VAUGHN ESTABLISHED THAT PLAINTIFFS FAILED TO MITIGATE DAMAGES.**

[¶ 19.] Vaughn also argues that he should have been able to present the defense of failure to mitigate damages to the jury. This is an affirmative defense which must be raised and proven by the proponent. *See Mash v. Cutler*, 488 N.W.2d 642, 648 (S.D.1992) (citations omitted). Here, the trial court held:

> The court, in considering the issue of whether or not to give to the jury the issue of mitigation of damages does consider the evidence presented at this trial in a light most favorable to the nonmoving party. The court finds that the damages that are allowed are statutory in nature, that there is no evidence presented to the court which is in any way disputed as to the amount of damages, even considering the evidence in a light most favorable to the defendants.

This finding is supported by the fact that Phoenix and ETS, both of whom are now in bankruptcy, and who were unable to make interest payments, were unlikely to pay the principal and interest had rescission been accepted.

[¶ 20.] However, even if Phoenix would or could have fully refunded all monies to which Plaintiffs were entitled, Vaughn failed to establish this defense. Plaintiffs were sent the letter offering rescission on March 3, 2000 and were given thirty days to respond. It was not until four months after the offer of rescission that Phoenix ceased making payments to the Purchas-

---

4. Compare SDCL 37–25A–48 at ¶ 10 with SDCL 37–25A–47, under which a knowing violator can be prosecuted. SDCL 37–25A–47 provides in part, "[a]ny person who *willfully* violates § 37–25A–7 [ ] is guilty of a Class 5 felony[.]" (Emphasis supplied).

ers. Even after the first time their lease checks were returned, none of the Purchasers were aware that they had been taken in by a nationwide scam. On July 20, 2000, Phoenix sent a letter to the Purchasers regarding the failure to make the lease payments. The letter acknowledged that Phoenix could not make payments, but offered the Purchasers the "opportunity to exchange your lease with Phoenix for a new five-year lease with ETS." The letter goes on to promote the viability of ETS as a company and provides this warning: "Phoenix [ ] does not have the ability to continue operating ... By executing [the termination agreement, ETS lease and ETS option to sell agreement], *you can ensure that your next lease payment is on time and will continue each month until your lease expires.*" (Emphasis supplied.)

▬ [¶ 21.] Generally, damages are not recoverable for losses the plaintiff could reasonably have avoided. Restatement (Second) of Contracts, § 350 (2003). However, to apply this defense in this situation would require Plaintiffs to have foreseen that four months after the offer of rescission, Phoenix's pyramid or "Ponzi scheme"

would collapse and they would be left with substantial losses. At the time the offer of rescission lapsed, Plaintiffs were still unaware that they faced potential injury. They were also unaware that Phoenix was perilously close to bankruptcy. Plaintiffs and the Division believed that all that was needed was for Phoenix and Vaughn to properly register. To require them to predict this outcome, especially in the face of the fraud perpetrated upon them, would exceed the reasonable diligence requirement.

[¶ 22.] Vaughn seeks to rely on Phoenix's offer of rescission to shield him from liability, but in doing so, attempts to distance himself from the actions of ETS and Phoenix which served to actively discourage Plaintiffs from seeking rescission. An example of the actions which may have prevented Plaintiffs from going forward at an earlier date is a letter found in Plaintiffs' Exhibit 1 from ETS, Phoenix's successor in interest. The letter, which is set forth in full in the footnote below, attempts to prevent any action by a lessor against ETS.[5]

---

5.   Dear Lessor,
ETS received your letter dated September 18, 2000, and we apologize for the delay in reply. We are sure you can understand we have been receiving a large volume of letters and phone calls and, unfortunately, do not have the resources to reply in the expeditious manner we would like.
On September 11, 2000, ETS Payphones, Inc. ("ETS") filed a voluntary petition in the United States Bankruptcy Court, District of Delaware under Chapter 11 of the Bankruptcy Code. Upon filing this petition, a statutory stay became effective which protects ETS against the pursuit of actions by any party with respect to any assets or other rights of ETS that are considered property of the bankruptcy estate. This means that you, as a creditor of ETS, are precluded from taking any action against ETS with respect to any alleged pre-bankruptcy debt. This prohibition is so broad as to preclude you, our creditor, from making requests for payment during the stay period.
A willful violation of the stay may result in you being held in contempt by the United States Bankruptcy Court. Further you may be liable for compensatory and punitive damages resulting from your violation of the stay. We at ETS wish we could furnish you with more information at this point, but there are formal proceedings associated with the administration of ETS reorganization which must and will be followed. This is a statutorily mandated process designed to protect you, the creditor, and ETS. ETS must insist that this process be allowed to take its course without interference from the creditors. We will achieve this goal only through your understanding and patience.
Sincerely,
ETS Payphones, Inc.
Leasing Department

[¶ 23.] The defense of mitigation of damages does not require more than that the injured party exercise diligence to avoid further loss. Here, Plaintiffs became aware that they would incur loss when ETS ceased making payments in September 2000. Plaintiffs filed suit in October 2000. Vaughn did not establish a lack of diligence by Plaintiffs. Affirmed.

[¶ 24.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and MILLER, Retired Justice, concur.

[¶ 25.] MILLER, Retired Justice, sitting for MEIERHENRY, Justice, disqualified.